**MOOSE TOYS PTY, LTD,**
**et al., Plaintiffs,**

**v.**

**CREATIVE KIDS FAR EAST**
**INC., et al., Defendants.**

**16-cv-1072 (VM)**

United States District Court,
S.D. New York.

Signed July 14, 2016

600

Ashly Erin Sands, Jennette Elizabeth Wiser, Jason M. Drangel, Epstein Drangel LLP, New York, NY, for Plaintiffs.

Douglas Alan Miro, Alan Federbush, Ariel Samuel Peikes, Ostrolenk, Faber, LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge

In its complaint dated February 11, 2016, Moose Toys Pty, Ltd ("Moose Toys"), Moose Creative Pty Ltd ("Moose Creative"), Moose Enterprise Pty Ltd ("Moose Enterprise"), and Moose Creative Management Pty Ltd ("Moose Management") (collectively, "Plaintiffs") allege: (1) copyright infringement of federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. Section 101; (2) trademark infringement of federally registered trademarks in violation of Section 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. Section 1051; (3) counterfeiting of federally registered trademarks in violation of 15 U.S.C. Sections 1114(1)(a)–(b), 1116(d), and 1117(b)-(c); (4) false designation of origin and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. Section 1125(a); and (5) related state and common law claims against Creative Kids Far East Inc. ("Creative U.S.") and Creative Kids Far East Limited ("Creative HK," together with Creative U.S., "Defendants"). ("Complaint," Dkt. No. 1.) Specifically, Plaintiffs allege that Defendants are "manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, and/or selling" unauthorized and counterfeit products to United States wholesalers, distributors, retailers, and consumers. (Id. at ¶ 12.) "Plaintiffs have identified a total of nine-

teen (19) Infringing Products manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold by Defendants" allegedly without Plaintiffs' authorization. (Id. at ¶ 33.)

By letter dated March 28, 2016, Defendants requested a pre-motion conference in anticipation of filing a motion to dismiss and, in the interim, an extension on their time to answer or otherwise respond to the Complaint.[1] ("March 28 Letter," Dkt. No. 18.) Defendants stated that their contemplated motion was based on the forum selection clause ("Forum Selection Clause") contained in the license agreement ("License Agreement") signed by Moose Enterprise and Creative HK.[2]

In response to Defendants' pre-motion letter, this Court held a telephone conference with the parties on April 15, 2016 and directed them to submit letter briefs addressing the application of the Forum Selection Clause. (See Dkt. Minute Entry for Apr. 15, 2016.)

Defendants filed their letter brief on April 25, 2016. ("April 25 Letter," Dkt. No. 23.) As grounds for dismissal of the Complaint they argue that the Forum Selection Clause mandates Victoria, Australia as the exclusive forum to litigate any disputes governed by the License Agreement.

Defendants contend that Plaintiffs' copyright and trademark claims are subject to the Forum Selection Clause because resolution of these claims depends on interpretation of the License Agreement and Defendants' performance under it. Specifically, they argue that questions regarding whether the products at issue were "authorized" or "approved" are "in-

extricably intertwined" with interpretation of the Licensing Agreement. (Dkt. No. 23 at 2.) Defendants also argue that the question of whether Defendants' products were "licensed" is not merely a defense but is also raised directly by the Complaint. (Id.) They point to allegations in the Complaint acknowledging that Defendants "were licensed to manufacture, market, distribute, and sell approved [products]" and that Plaintiffs have identified "nineteen (19) Infringing Products manufactured, advertised, marketed, promoted, distributed, displayed, offered for sale, and/or sold by Defendants without [Plaintiffs'] authorization." (Id.)

Furthermore, Defendants maintain that Plaintiffs' signing of the Licensing Agreement containing the Forum Selection Clause waived claims that could be brought only in a United States forum. Addressing Plaintiffs' assertion that certain claims are not recognized in Australia, they contend that this objection has no bearing on the enforcement of the Forum Selection Clause.

Finally, Defendants argue that although Moose Enterprise is the only plaintiff that signed the License Agreement, all of the Plaintiffs are subject to the Forum Selection Clause, because the non-signatories are successors-in-interest or "closely related" to Moose Enterprise such that they are also subject to the Forum Selection Clause. (Id. at 3.) In support of this point, Defendants argue that Moose Creative owns the trademarks and Moose Management the copyrights in dispute, and that Moose Toys is licensed to distribute and sell in the United States products under all

---

1. By Order dated March 29, 2016, Judge Woods, sitting in Part I, extended Defendants' deadline to answer or otherwise respond to the Complaint, by thirty (30) days following the pre-motion conference. (Dkt. No. 18.)

2. Defendants also noted in the March 28 Letter that Creative HK had not yet been served with the summons and Complaint. In light of the Court's decision that the Forum Selection Clause controls this dispute and compels dismissal, the Court declines to rule on the issue of service.

of the marks and copyrights Plaintiffs assert against Defendants. Accordingly, Defendants argue that all of the Plaintiffs are subject to the Forum Selection Clause.

By letter dated May 2, 2016, Plaintiffs responded to Defendants' April 25 Letter. ("May 2 Letter," Dkt. No. 24.) They argue that while Moose Enterprise and Creative HK entered into the License Agreement for the manufacture and distribution of certain products, the License Agreement was terminated by Moose Enterprise, and none of the nineteen (19) products the Complaint alleges were infringed, in fact were approved for manufacturing, marketing and sale by the Defendants prior to termination of the Licensing Agreement.[3] (Dkt. No. 24 at 1.) Plaintiffs contend that subsequent to the termination of the contract, Defendants continued to manufacture and distribute products "under and/or featuring Plaintiffs' Marks and Works that were not approved by Plaintiffs and were outside of the scope of the License Agreement." (Id.) Accordingly, Plaintiffs argue that the Complaint alleges infringements that derive from Defendants' misappropriation of their copyrights and trademarks and not from the Licensing Agreement.

Moreover, Plaintiffs argue that even if the Forum Selection Clause did cover the claims alleged in the Complaint, it is not enforceable against Creative U.S. because: (1) Creative U.S. was not a signatory to the License Agreement; (2) (a) the License Agreement was presented to Plaintiffs through a third-party licensing agent, (b) the License Agreement explicitly prohibits any sublicense, and (c) there is no mention of any "affiliate" or "distributor" in the License Agreement; and (3) Defendants have failed to demonstrate that Creative U.S. is "closely related" to Creative HK or the contract dispute itself such that en-

forcement of the clause by Creative U.S. was foreseeable to Plaintiffs prior to the instant dispute. (Id. at 2.)

On June 3, 2016, this Court held a second telephone conference with the parties to ascertain whether the Plaintiffs' allegations concerning infringement of their rights occurred after the Licensing Agreement was terminated. (See Dkt. Minute Entry for June 3, 2016.) Based on that conference, the Court concluded that this question raised a disputed issue of fact that requires interpretation of the Licensing Agreement. Accordingly, the Court ruled that the instant dispute is subject to the Forum Selection Clause and informed the parties that it would issue a written decision dismissing the action.

The Court construes Defendants' April 25 Letter as a motion to dismiss the Complaint based on the Forum Selection Clause contained in the Licensing Agreement ("Motion"). Having considered the parties' arguments, the Court finds that Victoria, Australia is the proper forum to adjudicate this action. Therefore, Defendants' Motion is GRANTED.

## I. DISCUSSION

### A. APPLICABILITY OF THE FORUM SELECTION CLAUSE

#### 1. Legal Standard

■ To determine whether dismissal of a claim based on a forum selection clause is warranted, the Second Circuit requires a four-prong analysis: (1) "The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement;" (2) "The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties

---

**3.** The exact date of the License Agreement's termination has not been provided by the     parties.

are required to bring any dispute to the designated forum or simply permitted to do so;" (3) "Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause;" and (4) "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.... The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Phillips v. Audio Active Ltd., 494 F.3d 378, 383–84 (2d Cir.2007) (internal quotation marks omitted).

■ Where the parties have agreed in advance on a forum that is exclusive of all others, and where the forum clause was communicated to a resisting party and covers the claims and parties involved in the dispute, the contractual choice of forum is accorded a presumption of enforceability. See id. at 383; see also Midamines Sprl. Ltd. v. KBC Bank NV, No. 12 Civ. 8089, 2014 WL 1116875, at *3 (S.D.N.Y. Mar. 18, 2014) ("Under the doctrine of forum non conveniens, a valid forum-selection clause requiring suit in a state or foreign forum must be given 'controlling weight in all but the most exceptional cases.'") (citing Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, —— U.S. ——, 134 S.Ct. 568, 579, 187 L.Ed.2d 487 (2013)).

■ In M/S Bremen v. Zapata Off–Shore Co., the Supreme Court held that this presumption may be rebutted only by a strong showing that the clause should be set aside. 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Second Circuit further elaborated that a mandatory forum selection clause is enforceable unless: "(1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." Phillips, 494 F.3d at 392.

The Second Circuit in Magi XXI, Inc. v. Stato Della Citta Del Vaticano held that "[a] contractually-based forum selection clause also covers tort claims ... if the tort claims ultimately depend on the existence of a contractual relationship between the ... parties." 714 F.3d 714, 724–25 (2d Cir.2013) (internal quotation marks omitted); see also Cfirstclass Corp. v. Silverjet PLC, 560 F.Supp.2d 324, 329 (S.D.N.Y. 2008) ("A contractually-based forum selection clause will also encompass tort claims ... if resolution of the claims relate to interpretation of the contract.") (internal quotation marks omitted).

## 2. Application

Here, the Forum Selection Clause provides in its entirety:

> The Agreement shall be governed by and construed in accordance with the laws in force in the State of Victoria, Australia and each party submits to the exclusive jurisdiction of the courts of that State. (Dkt. No. 23, Ex. A.)

Plaintiffs do not dispute that the Forum Selection Clause was reasonably communicated to them. (See Dkt. No. 24 at 2.) The Court now turns to the three remaining prongs outlined in Phillips.

### a. Mandatory or Permissive

■ The Forum Selection Clause explicitly provides that "each party submits to the exclusive jurisdiction of the courts of Victoria, Australia." (Dkt. No. 23, Ex. A.) This provision contains precisely the type of language that courts have routinely re-

lied upon to find forum selection clauses to be mandatory. See Phillips, 494 F.3d at 386 (indicating that use of the term "exclusive" indicates mandatory language); see also, e.g., KTV Media Int'l, Inc. v. Galaxy Group, LA LLC, 812 F.Supp.2d 377, 384–85 (S.D.N.Y.2011) (finding mandatory a forum selection clause that provides that the contract parties "consent[ ]" to the "exclusive jurisdiction" of California courts); Cent. National–Gottesman, Inc. v. M.V. "GERTRUDE OLDENDORFF", 204 F.Supp.2d 675, 678 (S.D.N.Y.2002) (finding a forum selection clause providing that "[a]ny disputes" were "to be decided in London according to English law" to be mandatory). Accordingly, the Court finds that the Forum Selection Clause is mandatory.

b. Scope

Courts have identified at least two categories of terms describing the scope of a forum selection clause. The narrower category includes terms such as "arise out of," "arise from," or "arising under," whereas the broader category includes terms such as "in connection with," "relating to," or "associated with." See Phillips, 494 F.3d at 389–90. Here, the Forum Selection Clause uses the language "[t]his Agreement," which the court in Prod. Res. Grp., L.L.C. v. Martin Prof'l, A/S, held to be equivalent to the narrower category. 907 F.Supp.2d 401, 412 (S.D.N.Y.2012); see, e.g., Phillips, 494 F.3d at 389 (defining "arise out of" as "to originate from a specified source"). Thus, the scope of the Forum Selection Clause should be construed as covering disputes that arise out of, from, or under the Licensing Agreement.

■ The Court is persuaded that Plaintiffs' claims derive from the License Agreement insofar as interpretation of the Licensing Agreement is necessary to determine whether Defendants were authorized to manufacture, advertise, market, promote distribute, display, or offer for sale the nineteen (19) products at issue in the Complaint. Whether the products were approved for use by Defendants prior to termination of the Licensing Agreement constitutes a factual dispute resolution of which necessarily depends on interpretation of the Licensing Agreement. Accordingly, the Court finds that the claims involved in the instant dispute are subject to the Forum Selection Clause.

c. Rebutting the Presumption of Enforceability

■ Based on a review of the parties' submissions, the Court is persuaded that Plaintiffs have not rebutted the presumption of enforceability. Plaintiffs have not offered any evidence or put forward any argument that enforcement of the Forum Selection Clause would be unreasonable or unjust. At best Plaintiffs argue that Australia would be an inconvenient forum. The Court finds Plaintiffs' argument unpersuasive.

Here, Plaintiffs and Defendants are sophisticated parties to an international transaction. There is no reason to presume that the Forum Selection Clause's impact was not factored by the parties into the costs and other considerations involved in carrying out the Licensing Agreement at the time it was bargained for and executed. See Aguas Lenders Recovery Grp., 585 F.3d 696, 701 (2d Cir.2009) ("[I]t would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations.") (citing M/S Bremen, 407 U.S. at 14, 92 S.Ct. 1907). "Where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed in-

convenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." M/S Bremen, 407 U.S. at 16, 92 S.Ct. 1907.

Therefore, the Court is persuaded that enforcement of the Forum Selection Clause would not be unreasonable or unjust.

## B. PARTIES SUBJECT TO THE FORUM SELECTION CLAUSE

█ Whether the non-signatory Plaintiffs are successors-in-interest or "closely related" to the signatory Plaintiff—Moose Enterprise—so as to subject them to the Forum Selection Clause raises an issue of fact that falls to the Australian courts to decide. Likewise, whether Creative U.S., a non-signatory defendant to the License Agreement, may enforce the Forum Selection Clause against the Plaintiffs, also constitutes a question to be decided by an Australian court. This Court, therefore, declines to rule on these factual disputes and dismisses this case in its entirety. See Magi, 714 F.3d at 722 (holding that "where the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses").

## II. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 23) of defendants Creative Kids Far East Inc. ("Creative U.S.") and Creative Kids Far East Limited ("Creative HK") set forth in their letter dated April 25, 2016 seeking dismissal of this action based on the forum selection clause contained in the parties' license agreement is **GRANTED.**

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**